## GRIFFIN v. THE IOWA HOMESTEAD COMPANY.

1. Estoppel: SPECIFIC PERFORMANCE. The sufficiency of a certain state of facts to operate as an estoppel upon the grantee of a railroad company to deny the validity of a pre-emption claimed to be made upon lands granted to the State of Iowa to aid in the construction of a certain road, under Sections 10, 11 and 12 of Chapter 1, Laws of the Extra Session of the Fifth General Assembly, considered and determined.

*Appeal from Webster District Court.*

MONDAY, OCTOBER 15.

THIS is a suit in equity to compel the delivery of a deed for certain lands included in the grant to the Dubuque and Pacific Railroad Company. The District Court granted the relief prayed for, and the defendant appeals. The further necessary facts are stated in the opinion.

*Jno. F. Duncombe* for the appellant.

*G. W. Bassett* and *Finch, Clarke & Rice* for the appellee.

COLE J.—The facts of this case, as developed by the pleadings and proofs, are substantially these: The plaintiff

I. ESTOP-
PEL: spe-
cific per-
formance.

claiming that, by actual occupation and improvement upon a certain one hundred and sixty acres of land, included in the grant to the Dubuque and Pacific Railroad Company, he held a valid claim thereto, he made application to the county judge of Webster county, where said land was situated, within the proper time, to prove his right, and did produce the requisite proof, and obtained from said county judge a certificate of the fact as provided for by sections 10, 11 and 12, of chapter 1, of the laws of the Extra Session of the Fifth General Assembly. Afterward, one of the trustees of said railroad company, by order of the board, attended in Webster county for the purpose of hearing proofs, &c., by those asserting claims to any of the lands, under the sections aforesaid. The plaintiff appeared before such trustee, and exhibited his certificate and made the required proofs.

Subsequently to this, the defendant acquired the title to a large quantity of the lands granted to said railroad company, including the land in controversy. Subject, however, to the rights of persons holding valid claims thereto or to any part thereof, under the sections above referred to. After the defendant obtained its title, an agent of the defendant was sent to the county aforesaid to make further investigations in relation to the right of persons asserting claims upon any of the lands acquired by it from the railroad company, as before stated.

The plaintiff went to see the agent of the defendant, so sent to investigate the claims, to exhibit to him the certificate of the county judge, and make the requisite proofs. The agent, however, had left before the plaintiff arrived, and thereupon the plaintiff went to a sub-agent, who was clothed with only a limited authority, and exhibited his certificate, and made his statement to him. This sub-agent disclaimed any authority to determine the

matter, but agreed to and did communicate, by letter, the facts as stated by plaintiff, to the full and authorized agent of the defendant.

Upon receiving the letter the agent of the defendant caused to be executed and forwarded to the sub-agent and another, authorized to receive money for the defendant, the deed of defendant for the land in controversy, for delivery to the plaintiff upon his paying four hundred dollars in money, which was the true consideration or entrance price of the land. The plaintiff called upon the sub-agent to pay the money and get his deed, but failed to get it, because of an alleged inability by the sub-agent to procure a proper revenue stamp. Another application for the deed failed, because it was locked up in a safe, and the person having the key to it was absent from the town. The plaintiff thereupon left the money with a friend, for him to pay to the person authorized to receive money for the defendant, and to procure from such person the deed. This friend made one unsuccessful effort to execute his trust, and, on the second trial, being unable to get the deed, because of an alleged inability to find it, he paid the money to the person authorized to receive it, and was to have the deed as soon as the person could find it.

After all this the defendant sent his sub-agent to survey the land, and ascertain definitely about plaintiff's right to purchase the land under his claim and the sections aforesaid. This survey is claimed to have disclosed the fact that plaintiff's house was not on the land in controversy, and that only a small portion of his improvement was on it; whereby plaintiff's right to purchase was, at least, involved in doubt, and is flatly and fully denied by defendant.

We hold, that, under these facts and the sections of the act referred to, it is too late for the defendant to refuse to

deliver the deed, and that it is estopped, by its own negligence and act, from controverting the plaintiff's right to purchase, and especially so while retaining the consideration paid.

. Affirmed.